# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

GERARD R. GUNTHERT and ABBY B. GUNTHERT, individually and on behalf of all those similarly situated,

    Plaintiffs,

v.

BANKERS STANDARD INSURANCE COMPANY,

    Defendant.

CA No. 5:16-cv-00021-MTT

## ORDER

WHEREAS, Plaintiffs Gerard R. Gunthert and Abby B. Gunthert (the "Guntherts" or "Class Plaintiffs") on behalf of themselves and a settlement class of similarly-situated persons (defined below as the "Settlement Class") and Defendant Bankers Standard Insurance Company ("Bankers Standard," and together with the Plaintiffs, the "Parties") entered into a Settlement Agreement[1] dated October 2, 2018; and

WHEREAS, the Court entered an Order on October 17, 2018 ("Preliminary Approval Order"), preliminarily approving the Settlement, preliminarily certifying the Settlement Class for settlement purposes under Federal Rule of Civil Procedure Rule 23(b)(3), ordering that notice be disseminated to the Settlement Class, scheduling a Fairness and Final Approval Hearing for March 5, 2019, and providing Settlement Class Members with an opportunity to opt-out of the Settlement Class and/or object to the proposed Settlement or to Class Counsel attorneys' fees and costs and/or the Plaintiffs' service awards; and

---

[1] Unless otherwise specifically defined herein, the capitalized terms in this Order Approving Settlement have the same meaning as attributed to them in the Settlement Agreement.

1

WHEREAS, the Court held a Fairness and Final Approval Hearing on March 5, 2019 to determine whether to grant final approval to the Settlement Agreement; and

WHEREAS, the Court is contemporaneously issuing a Judgment that, among other things, certifies the Settlement Class, approves the Settlement Agreement, and dismisses the Settlement Class Members' claims with prejudice as to Bankers Standard;

NOW THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. **Incorporation of Settlement Documents.** This Order Approving Settlement (the "Order") incorporates and makes a part hereof the Settlement Agreement, including all exhibits thereto. The Settlement Agreement and all exhibits thereto shall be referred to collectively as the "Settlement Agreement."

2. **Jurisdiction**. The Court has personal jurisdiction over all Settlement Class Members (as defined below) and has subject matter jurisdiction over this Action, including, without limitation, jurisdiction to approve the Settlement Agreement, grant final certification of the Settlement Class for settlement purposes, and dismiss the Action with prejudice.

3. **Final Settlement Class Certification and Definition.** The Settlement Class this Court preliminarily certified is hereby finally certified for settlement purposes under Federal Rule of Civil Procedure Rule 23(b)(3). The Settlement Class is defined as follows:

> All insureds of Bankers Standard who pursued a claim under their homeowners policy for covered losses to their real property located in Georgia due to fire, water, mold, or foundation/structural damage occurring between January 15, 2010 and May 1, 2018.
>
> Specifically excluded from the Settlement Class are: (a) Defendant's employees, officers, directors, agents, and representatives; (b) federal judges who have presided over this case and any member of the Court's staff and immediate family; and (c) all Persons who have timely opted-out of the Settlement Class pursuant to the requirements in the Agreement.

"Settlement Class Member" as used herein means any person in the Settlement Class who is not properly opted out of or otherwise excluded from the Settlement Class.

4. **Issue for Certification.** The issue that the Court is deciding on a class-wide basis is whether the terms of the proposed Settlement are fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure Rule 23(e) and governing law construing that Rule. In making that determination, the Court also has considered, as discussed herein, whether proper notice of the Proposed Settlement was given under Federal Rule of Civil Procedure Rule 23(c)(2)(B) and Federal Rule of Civil Procedure Rule 23(e)(1) to the Settlement Class and any other relevant persons so that the Settlement Agreement's terms will have binding effect.

5. **Adequacy of Representation.** The Class Plaintiffs and Class Counsel have fully and adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement and have satisfied the requirements of Federal Rule of Civil Procedure Rule 23(a)(4).

6. **Notice.** The Court finds that the distribution of the Notice and the notice methodology were implemented in accordance with the terms of the Settlement Agreement and this Court's Preliminary Approval Order. The Court further finds that the Notice was simply written and readily understandable, and that the Notice and notice methodology: (a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and the claims in the Action, their rights to object to the proposed Settlement and to appear at the Fairness and Final Approval Hearing, and their right to exclude themselves from the Settlement Class; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons

entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.

7. **Final Settlement Approval.** The terms and provisions of the Settlement Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, the Plaintiffs and the Settlement Class, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law. The Settling Parties and their counsel are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

8. **Findings in support of settlement approval.** In weighing final approval of a class settlement, the Court's role is to determine whether the settlement, taken as a whole, is "fair, adequate and reasonable and . . . not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (internal quotation marks and citations omitted); *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). To aid in this determination, courts in this Circuit consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and duration of litigation; (3) the stage of the proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recoveries; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement. *See Leverso*, 18 F.3d at 1530 n.6; *Bennett*, 737 F.2d at 986. "In assessing these factors, the Court 'should be hesitant to substitute . . . [its] own judgment for that of counsel.'" *Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1315

(S.D. Fla. 2005) (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (same). Application of these factors in this case supports final approval of the Settlement:

    a. The Court must consider whether a proposed settlement is "the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "There is a presumption of good faith in the negotiation process. . . . Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. . . . Further, where the case proceeds adversarially, this counsels against a finding of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citations omitted); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001). Here, there is no claim of fraud or collusion. The Settlement is the product of hard-fought, arm's-length negotiations by capable and experienced counsel. Thus, there is a presumption that the Settlement is fair and reasonable. The Settlement was informed by Class Counsel's thorough investigation and discovery regarding relevant issues, and the parties have been negotiating the settlement, in on-and-off discussions, since May 2016. Doc. 73-1 at 9-11; s*ee Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (showing a record "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[T]he trial court may legitimately presume that counsel's judgment 'that they had achieved the desired quantum of information necessary to achieve a settlement,' . . . is reliable.") (citations omitted). Accordingly, this factor weighs in favor of final approval of the Settlement.

    b. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Newberg

on Class Actions § 11:50 at 155 (4th ed. 2002). In this case, recovery by any means other than settlement likely would require additional years of litigation involving numerous expert witnesses, extensive motion practice, hearings, and appeals. Bankers Standard has contested liability throughout this litigation. *See* Doc. 20**.** Moreover, continued litigation of Plaintiff's claims would require a significant outlay of time and expenses for the parties, not to mention the consumption of significant judicial resources. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive"); *Saccoccio*, 297 F.R.D. at 693-94; *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 469 (S.D. Fla. 2002). In contrast, the proposed Settlement provides speedy and substantial benefits to every Class Member, while avoiding the expense and time associated with protracted litigation. *See, e.g.*, *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1381 (S.D. Fla. 2007) ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear."). Prompt and substantial relief to Class Members through the Settlement weighs in favor of final approval.

  c. "The law is clear that early settlements are to be encouraged, and . . . only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see also Lipuma*, 406 F. Supp. 2d at 1324 ("[V]ast formal discovery need not be taken.") (citing *Cotton*, 559 F.2d at 1332). The Settlement is informed by Class Counsel's investigation and discovery regarding relevant legal and factual issues and by its experience in similar cases. *See Thompson et al. v. State Farm Fire and Casualty Company*, 5:14-cv-32. Class Counsel engaged in written discovery, including

propounding and responding to discovery, reviewed the Defendant's responses to written discovery, and reviewed and analyzed information about Class Members' claims.

    d. In assessing the reasonableness of a settlement, courts should consider the "likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *Ressler*, 822 F. Supp. at 1555 ("A court is to consider the likelihood of the plaintiffs' success on the merits ... against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). The Settlement provides considerable relief for the Class while avoiding the risks of unfavorable rulings on these issues. Importantly, the Settlement provides that all Class Members will receive compensation for diminished value in proportion to the amount paid on their claims, and this compensation exceeds the diminished value on these claims predicted by the Defendants' expert. Doc. 73-1 at 13-14.

    e. "In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007). Here, the Settlement Agreement provides complete, valuable relief to the Class Members with respect to their claims and is therefore fair, reasonable, and adequate compared against the possible range of recovery. Bankers Standard has agreed to pay compensation for diminished value. That compensation provides full relief for the Class Members' claims for failure to pay diminished value.

    f. In considering a proposed class settlement, the Court "may rely upon the judgment of experienced counsel for the parties. . . . Absent fraud, collusion, or the like, the district court

'should be hesitant to substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Cotton*, 559 F.2d at 1330); *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015) (same); *In re Domestic Air*, 148 F.R.D. at 312-13 (same). In addition, "the reaction of the class is an important factor." *Lipuma*, 406 F. Supp. 2d at 1324. Here, Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters and strongly endorse the proposed Settlement. Moreover, no class members have objected or opted out. This positive response from the Class Members further evidences the fairness, reasonableness, and adequacy of the Settlement. *See Saccoccio*, 297 F.R.D. at 694 ("[A] low number of objections suggests that the settlement is reasonable"); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d at 1338 ("The lack of objection . . . suggests the terms are satisfactory. . . ."). The Court thus finds that the positive response from the Class Members here evidences the fairness, reasonableness, and adequacy of the Settlement.

9. **Implementation of Settlement.** Having found that the terms of the Settlement Agreement are fair, reasonable, and adequate to the Settlement Class, the Settling Parties, through the Administrator, are directed to implement and administer the Settlement in accordance with its terms and provisions.

10. **Binding Effect.** The terms of the Settlement Agreement and of this Order and the accompanying Judgment shall be forever binding on the Settling Parties and all non-excluded members of the Settlement Class, as well as their heirs, executors, administrators, beneficiaries, trusts, trustees, agents, representatives, predecessors, successors, and assigns as to all Released Claims.

11. **Releases.** The Releases as set forth in Paragraph 16 of the Settlement Agreement are expressly incorporated herein in all respects. The Releases shall be effective as of the Final Settlement Date.

12. **No Admissions.** Neither this Order and the accompanying Judgment nor the Settlement Agreement, nor any of the provisions of the Settlement Agreement or any negotiations leading to its execution, nor any other documents referred to in the Settlement Agreement or this Order or the accompanying Judgment, nor any action taken to carry out this Order and the Judgment, may be offered or received in evidence in any action or proceeding in any court, administrative panel, or proceeding or other tribunal as any admission or concession of liability or wrongdoing of any nature on Bankers Standard's part. Neither this Order and the accompanying Judgment nor the Settlement Agreement, nor any of the provisions of the Settlement Agreement or any negotiations leading to its execution, nor any other documents referred to in the Settlement Agreement or this Order or the accompanying Judgment, nor any action taken to carry out this Order and the Judgment is or shall be construed as an admission or concession by Bankers Standard as to the truth of any of the allegations in the Action or of any liability, fault, or wrongdoing of any kind on the part of Bankers Standard.

13. **Enforcement of Settlement.** Nothing in this Order or the accompanying Judgment shall preclude any action to enforce the terms of the Settlement Agreement.

14. **Attorneys' Fees and Costs.** The Court finds that an award of attorneys' fees and costs for Class Counsel in the amount of $450,000 is fair, reasonable and appropriate, and directs the Administrator to pay such amount to Class Counsel from the Settlement Fund pursuant to the terms of the Settlement Agreement.

15. **Findings in support of award of attorneys' fees and expenses.** It is well established that when a substantial benefit has been conferred upon a class, class counsel is entitled to attorneys' fees based upon the benefit conferred. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."); *Boeing Co. v. Van Germert*, 444 U.S. 472, 478 (1980). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Columbus Drywall*, 2012 WL12540344, at *1 ("The Eleventh Circuit requires that attorneys' fees in common fund cases be determined using the percentage-of-the-fund approach, rather than the former 'lodestar/multiplier' approach."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) (holding that the percentage of the fund is the exclusive method for awarding fees in common fund class actions). As discussed above, the nature and extent of the benefits achieved for the Class Members supports the requested fee.

In *Camden I*, the Eleventh Circuit provided a set of factors the Court may use to determine a reasonable percentage to award as an attorney's fee to class counsel: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputations, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the clients; and (12) the awards in similar cases. 946 F.2d at 772

n.3 (citing factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). These factors are guidelines and are not exclusive. The Court may also consider the time required to reach a settlement, whether there are any substantial objections to the settlement terms or requested fees, any non-monetary benefits to the class, and the economics of prosecuting a class action. *Id.* at 775. As applied here, the *Camden I* considerations support approval of the requested fee.

    a. The "most important factor" in determining the appropriate fee award in a common fund case is generally considered to be "the results obtained" for the class. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1204-05 (S.D. Fla. 2006); *see also Hensely v. Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). Here, the Settlement provides substantial relief for the Class Members' failure to pay claims. Thus, the Settlement provides the relief that the litigation was filed to obtain. Without Class Counsel's efforts, it is possible that the Class would not have obtained any relief whatsoever. The strong results achieved here support the requested fee.

    b. Class Counsel invested substantial time and effort to achieve a favorable result for the Class, including investigating the claims against Bankers Standard and its affiliates; drafting the complaint; engaging in written discovery, including propounding and responding to discovery; reviewing documents produced by Bankers Standard; conducting informal discovery; devoting significant time to negotiating the settlement as well as to the preliminary approval process and, most recently, to the final approval process. These efforts readily justify the requested fee.

c. "Attorneys should be appropriately compensated for accepting complex and difficult cases." *Columbus Drywall*, 2012 WL 12540344, at *3 (citations omitted). "It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. "Undesirability" and the risks and difficulty of the litigation should be evaluated from the standpoint of class counsel when they commenced the suit—not retroactively, with the benefit of hindsight. *See In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) (The point at which a settlement is reached is not relevant to determining the risks incurred by counsel). Throughout the litigation, Bankers Standard has disputed liability. In light of this uncertainty, the fact that Class Counsel negotiated relief weighs strongly in favor of approving the requested amount for Class Counsel's attorneys' fees and expenses.

d. "The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation." *Columbus Drywall*, 2012 WL 12540344, at *4. The prosecution of any complex class action requires unique legal skills and abilities that are to be considered when determining a reasonable fee. *See Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). "[T]he Court should consider the quality of the opposition, as well." *Columbus Drywall*, 2012 WL 12540344, at *4. This case presented difficult questions, which required commensurate skill to litigate the case properly. Class Counsel has extensive experience litigating and settling complex and class action litigation in state and federal courts. Doc. 74-2 at 22-55. Class Counsel's skill and extensive experience and reputation were important to achieving the strong result for the Class here. In addition, Bankers Standard was represented by skilled and experienced counsel, Clyde & Co. and O'Melveny & Myers, underscoring the skill required of and displayed by Class Counsel. *See*

12

*Doughnut Corp.*, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."). The skill and experience required of and demonstrated by Class Counsel further support the reasonableness of the fee requested.

e. "The customary fee in class actions is a contingency fee, because it is not practical to find any individual that will pay attorneys on an hourly basis to prosecute the claims of numerous strangers and take on the significant additional expenses of fighting with the defendants over class certification." *Columbus Drywall*, 2012 WL 12540344, at *4 (citations omitted). "Courts are encouraged to look to the private marketplace in setting a percentage fee." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d at 1340 (citations omitted). "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. Contingent fees between 30% and 40% "are the prevailing market rates throughout the United States for contingent representation." *Pinto*, 513 F.Supp.2d at 1341; *In re Public Serv. Co. of N.M.*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) (customary contingency fee in a non-representative action is in the range of 30% to 40% of the recovery). The settlement fund is $2,250,000, and Class Counsel requests $450,000, or 20%, for fees and expenses. Doc. 74-1 at 17, 25. Fee percentages usually fall between 20% and 30% of the settlement fund. *Camden I*, 946 F.2d at 775. Class Counsel's requested 20% falls at the low end of that range, which supports the determination that $450,000 in fees is fair and reasonable.

f. The contingent nature of the fee and the fact that the risks of failure and nonpayment in a class action are high are significant for purposes of determining if a fee award is appropriate.

13

*See Pinto v. Princess Cruise Lines, LTD*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."). Indeed, contingency fee arrangements often justify an increase in the attorney's fees awarded. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001). As courts in this Circuit have indicated:

> This rule helps assure that the contingency fee arrangement endures. If the "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548 (citations omitted); *see also Columbus Drywall*, 2012 WL 12540344, at *5; *see also Allapattah Servs., Inc.*, 454 F.Supp.2d at 1217 ("Absent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 ... will be undermined...."). Moreover, "[t]he relevant risks must be evaluated from the standpoint of Plaintiffs' counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight." *Pinto*, 513 F.Supp.2d at 1340. Here, Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and agreeing they would only receive a fee if there was a recovery. Doc. 74-2 at 19-20. Class Counsel assumed considerable risk in pursuing this litigation. Class Counsel received no compensation during the course of this litigation and incurred $5,658.91 in unreimbursed expenses. *Id*. Moreover, Class Counsel expended these resources despite the risk that they may never be compensated at all. The risks borne by Class Counsel support the award of the requested fee.

      g. Courts consider whether a lawyer may vary his or her fee for similar work in anticipation of obtaining repeat business with an established client. *Columbus Drywall*, 2012 WL 12540344, at *6 (quoting *Johnson*, 488 F.2d at 719). Class Members are not "in a position to promise future business . . . that would somehow offset" the time Class Counsel invested in

14

this case. *Id.* Class Counsel's compensation for the risk of handling this litigation must come from the Settlement, "rather than future business from these clients." *Id.*

      h. Positive Class Member response indicates support of the Class. *See Pinto*, 513 F. Supp. 2d at 1343. Here, no Class Members have opted out. Doc. 73-1 at 7. Positive response from the Class Members evidences the fairness, reasonableness, and adequacy of the Settlement. *See Saccoccio*, 297 F.R.D. at 694 ("[A] low number of objections suggests that the settlement is reasonable."); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d at 1338 ("The lack of objection . . . suggests the terms are satisfactory. . . ."). Furthermore, no Class Members have objected to the settlement. *Id.*

    16. **Service Awards**. The Court finds that a combined service award in the amount of $10,000 for the Guntherts ($5,000 each) is fair, reasonable and appropriate, and directs that Bankers Standard pay such amount to the Class Plaintiffs pursuant to the terms of the Settlement Agreement. Pursuant to the Settlement Agreement, the payment of such service awards is in addition to the benefits to the Settlement Class and will be paid separately by Bankers Standard and not from the Settlement Fund.

    17. **Modification of Settlement Agreement.** The Settling Parties are hereby authorized, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement, provided that such amendments, modifications, and expansions of the Settlement Agreement are not materially inconsistent with this Order and the accompanying Judgment and do not materially limit the rights of Settlement Class Members under the Settlement Agreement.

    18. **Retention of Jurisdiction.** The Court has jurisdiction to enter this Order and the accompanying Judgment. Without in any way affecting the finality of this Order and the

accompanying Judgment, this Court expressly retains exclusive and continuing jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, and of this Order and the accompanying Judgment, and for any other necessary purposes, including, without limitation:

      a.      enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order, or the Judgment (including, without limitation, whether a person or entity is or is not a Settlement Class Member, and whether claims or causes of action allegedly related to the Action are or are not barred by the Judgment or Releases);

      b.      entering such additional orders as may be necessary or appropriate to protect or effectuate this Order and the Judgment approving the Settlement Agreement, to dismiss all claims with prejudice, or to ensure the fair and orderly administration of this Settlement; and

      c.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction.

19.    **Dismissal of Actions.**  The claims by the Settling Parties and all other Settlement Class Members are hereby dismissed with prejudice as against Bankers Standard, without fees or costs to Bankers Standard except as set forth herein or in the Settlement Agreement.

20.    **Entry of Judgment.**  Because it is in the best interests of the Settlement Class Members that the settlement process be undertaken as soon as possible and because the Settlement Agreement resolves all claims by the Settlement Class Members, the Court finds that there is no just reason to delay the Judgment regarding the Settlement Agreement. Accordingly, the Court expressly directs that the Judgment regarding the Settlement Agreement be entered as to all parties and all claims in the Actions.

**SO ORDERED,** this 8th day of March, 2019.

                                          <u>S/Marc T. Treadwell</u>
                                          MARC T. TREADWELL, JUDGE
                                          UNITED STATES DISTRICT COURT